# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Franklyn Dimun Garrison,

        Petitioner,        Case Number: 21-cv-12769
                                    Honorable Denise Page Hood

v.

Bryan Morrison,

        Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS
## and CLOSING ACTION

Petitioner Franklyn Dimun Garrison, a Michigan state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for first degree felony murder, second-degree arson, fourth-degree arson, felon in possession of a firearm, and felony firearm.

The prosecution presented insufficient evidence for a jury to find Garrison guilty beyond a reasonable doubt. The state court's denial of this claim was an unreasonable application of Supreme Court precedent. The Court also finds that defense counsel was ineffective for failing to request an adjournment to allow a late-arriving defense witness to testify. The Court conditionally grants the petition for a writ of habeas corpus.

## I. Background

Following a jury trial in Wayne County Circuit Court, Garrison was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), second-degree arson, Mich. Comp. Laws § 750.73, fourth-degree arson, Mich. Comp. Laws § 750.75, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and felony firearm, second offense, Mich. Comp. Laws § 750.227b.  He was sentenced to life without parole for first-degree felony murder, 6 to 10 years for being a felon in possession, and 20 to 40 years and 4 to 10 years for the arson convictions, and 5 years for felony firearm.

Garrison filed an appeal by right in the Michigan Court of Appeals.  The Michigan Court of Appeals set forth the following relevant facts:

> Defendant's convictions arise from the July 18, 2015 shooting death of Kevin Walker, and the burning of Walker's home and of one of his vehicles sometime between 11:00 p.m. and midnight.  On the evening of July 18, 2015, defendant asked Desmond Johnson, one of several guests at his Eastside home for a ride to a then unnamed friend's house on the Westside of town sometime between 9:30 and 10:00 p.m. Johnson drove defendant and Dakairi Pannell (aka Kaelen Allen) to what became known as the victim's home on Detroit's Westside. Johnson waited in the car while defendant and Pannell went toward the house.  After waiting about ten minutes, Johnson called defendant, who did not answer.  Johnson called defendant again and told defendant that he was leaving and drove away at about 10:30 p.m.  About an hour later, defendant called Johnson and asked him to return to give defendant a ride, but Johnson refused.  Shortly after making this call, defendant turned off his cell phone and did not turn it back on until 2:55 a.m. at which time he placed a call to Pannell/Allen.

2

Sometime after 11:00 p.m., Walker's neighbor Geraldyne Reed, saw one of Walker's cars pull out of the spot where it had been parked for months, heard what she thought were firecrackers, and saw the car drive off seconds later.  Ten or fifteen minutes later, her son Edward Reed heard someone yelling "fire," and observed Walker's home ablaze.  He also saw Walker's body outside of the home on the ground.  Mr. Reed waited a few minutes before he placed a call to 911 at 12:48 a.m.  The police and fire departments responded shortly thereafter.  Fire experts estimated that the fire had been burning for a while and noted that it would have taken at least 20 to 30 minutes to burn in earnest if no accelerant had been used.  When the police arrived they observed Walker's body and they noted that he had been shot multiple times and the pockets of his pants had been turned out.  No drugs, money, or jewelry were found on his person. Walker's car was later found burned about six blocks from defendant's eastside home.

Defendant was arrested on July 30, 2015 and interviewed by Detroit Police Sergeant Derrick Griffin. His cell phone was examined. However, defendant had manually deleted all of the call information from the cell phone from February 19, 2015 through July 24, 2015. During his interview, defendant admitted getting a ride from Johnson to Walker's house but denied being accompanied by anyone else.  He also stated that he was only at the victim's house for about 15 or 20 minutes and that he got home around 1:30 or 2:00 a.m.  He insisted that he did not remember how he got home and denied taking one of Walker's cars back home to the east side.  Once confronted by Sergeant Griffin with the fact that his cell phone records showed that he had been in the area of the victim's house for about two hours, defendant nodded and replied "that it could have been that long, he was "f***** up."  Johnson was also arrested and interviewed, at which time he stated that defendant had given him a broken watch. The watch was later given to the police by Johnson's mother and analyzed for DNA.  Johnson also identified Pannell/Allen as the person who rode with defendant in his car to the victim's house.

Several witnesses were called at trial.  In addition to the Reeds and Johnson, two of Walker's relatives testified.  At trial Walker's nephew and daughter testified that he sold illegal drugs, usually had large amounts of money in his possession, and often wore a significant amount of jewelry.  Additionally DNA evidence was introduced.

3

Swabs from Walker's pockets, fingernail clippings, and a watch were examined. The pocket samples showed a mixture, with one major donor and at least two others. Walker was the major donor and Johnson and defendant were excluded as major donors. The sample was insufficient for association purposes concerning the minor donors. The fingernail clippings showed Walker as the sole donor. The watch showed a mixture with Johnson being the major donor. This sample was also insufficient for comparison concerning minor donors. State Police Forensic Scientist Ashley Bolahan, testified that she could not include or exclude anyone from being a minor donor. A cell phone expert was also called who placed the defendant's cell phone in the area of the victim's home from 10:39 p.m. to 11:27 p.m.

After the denial of a motion for directed verdict, the defendant called his mother as a witness. While he had filed a notice of alibi, the alibi witness, the defendant's sister arrived late to court and was not called as a witness.

*People v. Garrison*, No. 334063, 2018 WL 626028, at *1-2 (Mich. Ct. App. Jan. 30, 2018). These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

The Michigan Court of Appeals affirmed Garrison's convictions and sentences. *Id.*

Garrison then filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. In lieu of granting leave to appeal, the Michigan Supreme Court remanded the case to the court of appeals for consideration of two claims the court of appeals neglected to address in its initial opinion. *People v. Garrison*, 505 Mich. 880 (2019). The Michigan Supreme Court denied leave to appeal in all other respects. *Id.*

4

On remand, the Michigan Court of Appeals again affirmed Garrison's convictions and sentences. *People v. Garrison*, No. 334063, 2020 WL 6814660 (Mich. Ct. App. Nov. 19, 2020). The Michigan Supreme Court denied Garrison's application for leave to appeal. *People v. Garrison*, 507 Mich. 948 (2021).

Garrison then filed this habeas petition. He seeks relief on these claims:

I. The Michigan Court of Appeals' adjudication of petitioner's insufficiency of evidence claim was an unreasonable determination of the facts and an objectively unreasonable application of clearly established federal law.

II. The Michigan Court of Appeals' decision was objectively unreasonable when it found the state prosecutor did make improper remarks but failed to find reversable error where prejudice was shown.

III. Petitioner's convictions and sentences should be vacated because the state trial court violated his Sixth Amendment right to a speedy trial. In addition, petitioner's first appointed counsel was ineffective in not being prepared to bring the case to trial.

IV. Petitioner was denied his Sixth Amendment right to effective assistance of counsel for his defense where the state trial judge unconstitutionally instructed the jury and counsel failed to object. The Michigan Court of Appeals' adjudication of this claim was objectively unreasonable.

V. Petitioner was denied his Sixth Amendment right to effective assistance of counsel for his defense when defense counsel failed to seek an adjournment or continuance and/or obtain assistance to produce a key alibi defense witness for trial.

VI. The state trial court denied petitioner due process and the right to a fair trial by allowing inadmissible evidence to be introduced and thereby permitted the prosecutor to make impermissible arguments.

Respondent has filed an answer in opposition, arguing that Garrison's second, third, and sixth claims are procedurally defaulted and that all the claims are meritless. (ECF No. 11.)  Garrison has filed a reply brief.  (ECF No. 13).

## II.  Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254.  To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124-25 (2018) (quoting 28 U.S.C. § 2254(d)).  The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the

state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Sufficiency of the Evidence

Garrison argues that insufficient evidence was presented to support his convictions. He maintains that the Michigan Court of Appeals' denial of this claim was based on an unreasonable determination of the facts and unreasonably applied clearly established Supreme Court precedent.

### 1.

The Michigan Court of Appeals rejected Garrison's sufficiency-of-the-evidence argument:

> Defendant claims that the trial court erred when it denied his motion for a directed verdict because all the evidence proving his identity as the perpetrator was merely circumstantial. Thus he contends that there was insufficient evidence to support the prosecution's argument that it was him who shot the victim or aided and abetted in the crime. We disagree.
>
> Contrary to defendant's argument, direct evidence is not required. "Circumstantial evidence and reasonable inferences arising therefrom can sufficiently establish the elements of a crime." *People v. Schultz*, 246 Mich. App. 695, 702; 635 N.W.2d 491 (2001). To sustain a conviction for first degree felony murder, it must be established that the defendant caused the death while in the commission of another

7

specified felony, in this case that being larceny.  MCL 750.316(1)(b).
It must be proven "that the defendant committed or attempted to
commit that crime and he knowingly carried or possessed a firearm."
MCL 750.227b.  There is no dispute that someone used a firearm to kill
Walker on the evening of July 18, 2015, committed arson and stole his
car.  There was also credible testimony on the record regarding larceny.
Two persons, close to the victim testified that the victim always carried
large sums of money on him. The victim's body was found with his
pockets turned out and empty.

Sufficiency of evidence as to defendant's identity as the perpetrator is
the key focus of our analysis and we conclude that the evidence on that
issue was sufficient.  The record shows that defendant demonstrated
guilt in his conduct with the police during his videotaped interview on
July 30, 2015 following his arrest when he repeatedly gave false and
inconsistent statements to police.  He initially told police that he paid
someone other than Johnson to take him to the victim's house and he
denied remembering how he had gotten home or that he had taken
Pannell/Allen with him to the victim's house.  He also stated that he
had only stayed at the victim's house for about 15 minutes.  It was not
until the police confronted him with evidence that his cell phone records
showed that he had been in the Westside area for about two hours and
with information that they had spoken to Johnson who had stated that
it was him that had given defendant and someone else a ride to the
victim's house that defendant began to be more truthful. Defendant
admitted that he had taken Panell/Allen with him and that it was
Johnson who had given them the ride.  He also conceded that when he
had called Johnson to come back and get him that Johnson did not
return to pick him up.

There was significant testimony placing the defendant at the house in
the relevant time period.   He admitted going to the home with
Pannell/Allen and conceded that Johnson left them there.  He claims he
left before the arson, murder or larcenies occurred.  However, the calls
between Johnson and the defendant demonstrated that his cell phone
was on the Westside at or around 10:30 p.m.  Johnson's testimony
corroborates that he was asked to pick the defendant up from the
victim's house at about that same time.  The stolen vehicle, which was
found only blocks from the defendant's home, was seen by the victim's
neighbor Geraldyne Reed being driven away from the home sometime

after 11:00 p.m. right after she heard what she thought were firecrackers.

Viewing the circumstantial evidence and reasonable inferences in the light most favorable to the prosecution, there was sufficient evidence to convince a jury beyond a reasonable doubt that defendant committed or aided and abetted in the crimes for which he was convicted.

*Garrison*, 2018 WL 626028, at *2-3.

## 2.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Id.*

**3.**

The Michigan Court of Appeals held that sufficient circumstantial evidence established Garrison's identity as the shooter and arsonist beyond a reasonable doubt.  The state court cited this evidence:

- cellphone evidence placed Garrison at Walker's house at 11:27 p.m. (when he called Johnson for a ride);

- Garrison initially made false and inconsistent statements to police;

- Walker's stolen and burned vehicle was found blocks from Garrison's home;

- Geraldyn Reed saw Walker's vehicle being driven away sometime after 11:00 p.m., shortly after she heard what sounded like firecrackers.

This evidence supports, at most, "reasonable speculation" that Garrison was the shooter and arsonist.  *Newman v. Metrish*, 543 F.3d 793, 797 (2008).  But "reasonable speculation" is not "sufficient evidence."  *Id.*  Considering all the evidence in the light most favorable to the prosecution, reasonable doubt remains.

First, the cell phone evidence cited by the court of appeals showed that Garrison was at Walker's house at 11:27.  No evidence was presented to show that Garrison was at the house after that time.  In fact, Johnson testified that Walker said he was ready to leave Walker's home at that time.

Second, Garrison's inconsistent statements to police, while not helpful to his defense, are insufficient, even when considered alongside the other circumstantial

evidence, to allow a jury to support a finding of guilty beyond a reasonable doubt. Garrison's behavior may have indicated consciousness of guilt for *a* crime, such as purchasing cocaine. It was well-established at trial that the victim was a known dealer of powder and crack cocaine. But it would have been speculation for a jury to find this behavior significantly probative of whether Garrison committed murder and arson.

Third, Walker's stolen and burned vehicle was found six blocks from Garrison's home. Garrison lived on 4883 Grayton in the city of Detroit. The car was found at 4391 Three Mile Drive also in Detroit. The driving distance between these locations as plotted on Google maps is 1.0 mile.[1] One mile may be a short distance in a rural area, but in a densely populated city, one mile (or six blocks) is hardly close enough to warrant an inference connecting Garrison to the vehicle.

Geraldyne Reed's testimony established that she heard what sounded like firecrackers and saw the victim's car being driven away. She did not know who was

---

[1] The Court takes judicial notice of a Google map as a "source[ ] whose accuracy cannot reasonably be questioned," at least for the purpose of determining the general location of the home. Fed. R. Evid. 201(b). *See Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1008 (6th Cir. 2017) ("We may take judicial notice of maps showing the distances between these locations."); *cf. Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) ("We may, of course, take judicial notice of geography.") (Jackson, J., dissenting).

11

driving the vehicle.  She was certain that this happened after 11:00 p.m., beyond that, she did not offer consistent testimony as to how long after 11:00 this occurred.

In addition to the weakness of the inculpatory evidence, there are many gaps in the prosecution's evidence.  First, there was no evidence of motive offered.  Walker was known to sell crack and powder cocaine.  His daughter testified that he was a flashy dresser, loved shoes, expensive clothing, jewelry (including watches), and expensive clothes.  Walker's nephew, Devin, testified that Walker kept large sums of money in his house.  Once, Walker showed Devin he had $ 20,000 in cash in a safe in his home.  Devin also testified that Walker always carried between $ 4,000 and $ 5,000 in cash.  This flashy lifestyle and large amounts of cash may have rendered Walker a target to many people, but no evidence was offered to show that Garrison in particular considered him a target.

No testimony was offered to show that Garrison had a beef with the victim.  In fact, Walker's daughter testified that they had been friends for sixteen years.  Johnson testified that when he drove Garrison and Pannell/Allen to Walker's house neither man seemed agitated or angry.  Neither man mentioned a plan to rob or harm Walker, and neither appeared to be carrying a weapon.  Johnson was not suspicious of their behavior.

The Michigan Court of Appeals' statement that Garrison turned off his cell phone after calling Johnson at 11:27 p.m. and did not turn it back on until 2:55 a.m.

is an inferential leap not supported by the trial testimony. The State's expert in cell phone mapping testified that he could not ascertain where Garrison's cell phone was from 11:27 p.m. until 2:55 a.m. because "there was no activity during that time." (ECF No. 12-16, PageID.1173.) Where there was no evidence that Garrison turned off his phone, the conclusion that Garrison was trying to evade detection was nothing more than conjecture.

The police investigation also left multiple holes. Edward Reed, Walker's neighbor, testified that he heard gunshots and then, sometime later, heard someone outside yelling fire. When he went outside, he saw three young men yelling about a fire. Police officer Ramiz Atto interviewed those three men at the scene. The men said they were just walking past the house when they saw the house on fire. Atto obtained the men's names and contact information. The lead detective later attempted to contact the men based on the information contained in Atto's report. He was unable to locate any of the men. The detective did not recall whether he was able to verify that the men lived at the addresses they had provided to Atto.

When Johnson visited Garrison's home a few days after the murder, Garrison gave him a broken watch. The prosecution attempted to connect Garrison to the murder through this watch because Walker liked fancy jewelry including watches. But no evidence was ever presented to show that the watch was Walker's. It would

be unreasonable to conclude that because Walker liked jewelry the watch given to Johnson had any connection to Walker.

The prosecution's case was similarly lacking in any physical evidence. The prosecution presented testimony from forensic scientist Ashley Bolahan who testified as an expert in DNA analysis. Bolahan testified that the watch showed a mixture of DNA donors. Johnson was the major donor, and the sample was insufficient for comparison concerning the minor donors. Swabs from pockets of Walker's pants which had been turned inside out showed one major donor and at least two other donors. Walker was the major donor, and the sample was insufficient to identify the minor donors.

A search warrant executed at Garrison's home on July 30, 2015 yielded a shoebox with three types of ammunition: one .40 caliber bullet, eleven .22 caliber bullets, and forty-two .38 caliber bullets. The parties stipulated that the caliber of the bullet and fragment recovered from the victim could not be determined. Nor could it be determined whether they were fired from the same gun. Other than establishing that Garrison had bullets in his home, no link was established between the ammunition and the bullet and fragments that struck Walker.

The Sixth Circuit Court of Appeals has held similarly weak evidence insufficient on habeas review. In *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), the Sixth Circuit held insufficient evidence was presented to prove the petitioner

guilty beyond a reasonable doubt of aiding and abetting a carjacking.  The petitioner was present at a gas station when the carjacking occurred.  *See id*. at 349.  The man who committed the carjacking exited the petitioner's car just before taking the victim's car at gunpoint.  *See id*.  The victim testified that the petitioner stared at the victim from his car while the carjacker fired shots and drove the victim's vehicle away.  *See id*.  The petitioner then attempted to drive off, but before he could do so, the victim punched the petitioner in the face through the car window and pulled the petitioner out of the car.  *See id*.  The victim drove the petitioner's car to the police station to file a report.  The petitioner did not try to retrieve his car from the police station.  *See id*.  At trial, the prosecutor argued that the petitioner acted as a lookout and potential getaway driver for the gunman, who was never located.  *See id.*

The Sixth Circuit found this evidence insufficient to support the conviction:

Although the state relies on evidence demonstrating that Brown 'stared at the victims,' never pumped gas at the gas station, attempted to flee following the gunshots, and failed to contact the police to retrieve his car, none of this evidence suggests that Brown assisted or encouraged the gunman in the commission of the armed robbery and carjacking or that Brown intended for the gunman to commit the offenses – both necessary elements for aiding and abetting under Michigan law.

*Id.* at 353.

Garrison's convictions are based on evidence at least as weak as that in *Brown*, if not weaker.  There is no doubt that circumstantial evidence by itself may support a conviction, *see Hill v. Mitchell*, 842 F.3d 910, 933 (6th Cir. 2016), but the

circumstantial evidence in this case is nothing more than "conjecture camouflaged as evidence." *Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001). The state court's affirmance of Garrison's convictions was an unreasonable application of Supreme Court precedent.

### B. Prosecutorial Misconduct

In his second and sixth claims, Garrison argues that he was denied a fair trial by the prosecutor's misconduct. Respondent argues that these claims are procedurally defaulted. The Court is not required to address a procedural default issue before deciding against the petition on the merits. *Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first.") Here, judicial economy favors proceeding directly to a discussion of the merits of this claim rather than conducting a lengthy procedural default inquiry.

Under *Darden v. Wainwright,* 477 U.S. 168 (1986), a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render

the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (alteration in original) (quotation omitted). "That leeway increases in assessing a state court's ruling under AEDPA," as this court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

First, Garrison objects to the prosecutor's comment during rebuttal closing argument that Garrison had shaken his head "no" during Desmond Johnson's testimony and appeared to be mouthing words to Johnson. The Michigan Court of Appeals held that even if the prosecutor's comments were improper, Garrison was not prejudiced. The trial court instructed the jury that the attorneys' arguments were not evidence, and jurors are presumed to follow their instructions. *United States v. Olano*, 507 U.S. 725, 740 (1993). Given this presumption and the brief and isolated nature of the prosecutor's statement, the Michigan Court of Appeals decision was not an unreasonable application *Darden*.

17

Next, Garrison argues that the prosecutor's opening statement and closing argument included statements that were not supported by the evidence. Specifically, he maintains that the prosecutor's arguments regarding the cell phone evidence improperly inferred that Garrison had the opportunity to commit the crimes. The Michigan Court of Appeals found no misconduct:

> A review of the prosecutor's statements in context reveals no misconduct. Rather, in opening statement, the prosecutor argued what he believed the evidence would show and in closing argument, the prosecutor argued how the evidence supported his theory that defendant either alone or with the assistance of Allen, robbed and murdered Walker, and set Walker's home and vehicle on fire. The prosecutor was allowed to argue his theory of the case and all reasonable inferences from the evidence supporting his theory. *Unger*, 278 Mich. App. at 236.

*Garrison*, 2020 WL 6814660, at *4.

The prosecutor is free to argue "reasonable inferences from the evidence adduced at trial." *West v. Bell*, 550 F.3d 542, 566 (6th Cir. 2008) (quotation and citation omitted). Garrison fails to show that the prosecutor's arguments fell outside the range of reasonable inferences. To the extent that Garrison maintains that the expert witness testimony was improperly admitted because it was unreliable, he fails to state a claim upon which relief may be granted. The admission of expert testimony in a state trial presents a question of state law that does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001).

Garrison also argues that the prosecutor improperly argued that the bullets found in Garrison's home were the same caliber as those used in the shooting.  The Michigan Court of Appeals held that the prosecutor's argument was not improper:

> The type of bullet that was used to murder Walker was unknown.  There were no shell casings found at the scene, no murder weapon was ever recovered, and only unidentifiable bullet fragments were recovered from Walker's body.  Law enforcement did however seize multiple types of ammunition from defendant's residence, including 42 .38 caliber bullets.  At trial, a forensic technician testified about the difference between semi-automatic and revolver weapons in that semi-automatic weapons eject the shell casings from the weapon after firing whereas revolvers maintain the shell casings in the bullet chamber after the bullet is spent.  From this evidence, the prosecutor reasonably inferred that the lack of spent shell casings at the scene was indicative of the murder weapon having been revolver.  It was not improper for the prosecution to then infer that defendant at one time possessed a revolver given the amount of .38 caliber bullets seized, and that defendant disposed of the revolver, given the time that had elapsed in between the murder and his arrest.

*Garrison*, 2020 WL 6814660, at *6.

The inferences supporting the prosecution's argument are tenuous, but given the deference owed the state court's decision under AEDPA and the fact that the jury was instructed the arguments were not evidence, the Court cannot say that the decision was an unreasonable application of *Darden*.

Finally, Garrison argues that the prosecutor improperly vouched for the credibility of prosecution witness Desmond Johnson by stating that he "has no reason to lie about what he said, because he's talking about one of his really good friends."  *Garrison*, 2020 WL 6814660 at *7.  The Michigan Court of Appeals held

19

that the prosecutor's comment was proper because "the prosecutor did not assert some special knowledge concerning the veracity of Johnson's testimony and argued Johnson's credibility from the fact of his relationship with defendant." *Id.*

The state court's decision is not contrary to, or an unreasonable application of, Supreme Court precedent.  It is not improper for a prosecutor to explore a witness's motive for testifying that may bear upon credibility determinations. *See United States v. Akins*, 237 F. App'x 61, 64 (6th Cir. 2007). The prosecutor did not express a personal belief as to Johnson's credibility; instead, the prosecutor emphasized Johnson's personal motives for testifying and inferred that these motives were consistent with testifying truthfully.  This argument did not deprive Garrison of a fair trial.

### C.  Speedy Trial Claim

Next, Garrison claims that his right to a speedy trial was violated and that his first appointed attorney was ineffective for not being prepared to bring the case to trial.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial.  U.S. Const. amend. VI.  Courts must balance the following four factors in determining whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant. *Barker*

*v. Wingo*, 407 U.S. 514, 528 (1972).  The Sixth Amendment's Speedy Trial Clause does not extend to the period prior to arrest.  *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald*, 456 U.S. 1, 7 (1982).  Accordingly, the relevant inquiry for a speedy trial analysis is the time between arrest and trial.

The length of the delay is a threshold question.  "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Barker*, 407 U.S. at 530.  "[I]n this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry."  *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).  Once the court undertakes a full *Barker* inquiry, the length of delay becomes just one of many factors the court considers.  *Id.* at 652.

Garrison was arrested on July 30, 2015, and trial commenced on June 1, 2016.  *Garrison*, 2018 WL 626028 at *6.  So the time between Garrison's arrest and trial was 307 days (10 months, 2 days).[2]  The Michigan Court of Appeals, although not specifically citing *Barker*, cited *People v. Williams*, 475 Mich. 245, 261 (2006), which sets forth the *Barker* factors.  *Garrison*, 2018 WL 626028 at *6.  The state court held that the length of the delay was not presumptively prejudicial.  Under

---

[2] The Michigan Court of Appeals incorrectly states that the time between July 20, 2015 and June 1, 2016 is 11 months.  *See Garrison*, 2018 WL 626028 at *6.

21

Michigan law, prejudice is generally presumed "[w]hen the delay is more than 18 months." *People v. Rivera*, 301 Mich. App. 188, 193 (Mich. Ct. App. 2013). But federal law holds that a delay that approaches one year is presumptively prejudicial. *Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992). Because the state court held that the delay was not presumptively prejudicial, the court did not undertake a full *Barker* analysis. Nevertheless, the court of appeals addressed Garrison's claim that he was prejudiced by the delay. Garrison alleged that the delay caused him undue anxiety and impairment to the defense based on his first appointed counsel's deficiencies and ultimate withdrawal. The Michigan Court of Appeals found no prejudice because "anxiety alone is insufficient" and Garrison "offer[ed] no explanation of how this passage of time affected his successor counsel's ability to marshal an effective albeit unsuccessful defense." *Garrison*, 2018 WL 626028 at *6.

The state court's decision was not "so lacking in justification" as to put it "beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103. Because he fails to show a speedy trial violation, Garrison also has not shown that his first trial attorney was ineffective or negatively impacted substitute counsel's ability to defend the case. Relief is denied on this claim.

### D.  Ineffective Assistance of Counsel

In his fourth and fifth claims, Garrison argues that he received constitutionally ineffective assistance of counsel.  Specifically, he claims counsel was ineffective for failing to object to certain jury instructions and failing to request an adjournment to allow his alibi witness to testify.

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Garrison must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *See id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

1.

Garrison argues that defense counsel was ineffective for failing to object to the court's response to a jury question.   Garrison argues that counsel should have objected because the trial court's response failed to provide the jury adequate guidance.

The Michigan Court of Appeals held that the trial court's instruction was adequate and that counsel, therefore, was not ineffective for failing to object.   The state court explained:

> During jury deliberations, the judge received a note that stated: "How does aiding and abetting apply to first degree murder in this case."   The note then went on to read: "Can you please clarify aiding and abetting?"   The trial court, with the attorneys and defendant present, then went back on the record and read the jury's note.   The trial court then engaged in the following exchange with the parties:
>
>> THE COURT: It almost sounds to me the way that they've worded this that they want me to say, "How would you apply the theory of aiding and abetting in this case-which I certainly am not going to do- and Counsel argued for and against that in their closing statements.   People versus Turner has an extensive quote which basically is tracked by the language of the aiding and abetting instruction ... I suppose we could send in the statutory language and a note saying, "Here is the instruction. That is the language you have to follow."
>>
>> MR. GLENN: And it would also be mere presence because I believe they need to be read together.
>>
>> THE COURT: Right, but I don't see anything that I can say to them that would clarify it.
>>
>> MR. GLYNNE: I have no issue with-

THE COURT: Let me see what the inducement instruction says:

> "It does not matter how much help, advice or encouragement the defendant gave, however you must decide whether the defendant intended to help another commit the crime and whether his help, advice or encouragement actually did help, advise or encourage the crime."

I suppose we could send that in as well.

MR. GLYNNE: I don't mind that-certainly with the mere presence would-

THE COURT: All right.  So I'll resubmit 8.01 [aiding and abetting], 8.04 [inducement] and 8.05 [mere presence] as well as the statutory language and tell them that's the best that I can do, okay?

Neither party objected to the trial court's instructions as given to the jury.

In support of his argument that the trial court "refused" to provide the clarification and guidance requested by the jury, defendant only cites to portions of the exchange cited above as opposed to the exchange in its entirety.  However, when read in context, the exchange shows that the trial court judge gave the jurors guidance by providing the additional statutory language and resubmitting the jury instructions for 8.01, 8.04, and 8.05.  Further, the trial court's instructions to the jury, reviewed in their entirety, adequately presented the issues and elements, and sufficiently protected defendant's rights.

*Garrison*, 2018 WL 626028, at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The Court must defer to the state court's ruling that the instruction was proper and adequately informed the jury about the relevant law.  *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 1975); *see*

*also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review").

Because the Michigan Court of Appeals determined that the instruction was proper, Garrison's trial counsel was not ineffective for failing to object. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel.").

## 2.

In his fifth claim, Garrison argues that his defense counsel rendered ineffective assistance by failing to request an adjournment to allow his alibi witness to testify. In support of his claim, Garrison presents the affidavit of his sister Sharee Garrison. (ECF No. 3, PageID.93-95.)

Garrison argues that this claim is procedurally defaulted. The doctrine of procedural default applies when (1) a petitioner fails to comply with a state procedural rule, (2) the rule is actually relied upon by the state courts, and (3) the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006). The Michigan Court of Appeals held that its review of the record was "limited to errors apparent on the record" because Garrison did not file a motion in the trial court for a new trial or evidentiary hearing. *Garrison*, 2018 WL 626028 at *4. The Sixth Circuit Court of Appeals has held that such language was not a

state-court procedural default. *Mitchell v. Mason*, 325 F.3d 732, 739 (6th Cir. 2003).

The Sixth Circuit explained:

> When there has been no motion for a new trial or a *Ginther* hearing, the case law reveals that a Michigan reviewing court will consider claims of ineffective assistance of counsel but will be forced to limit itself to examining the trial record for errors, as no other record has been developed.[] Thus, while Ginther and its progeny indicate that it is crucial to develop an adequate record of trial counsel's failures if petitioner's claim is to succeed, we believe that those Michigan courts that have rejected ineffective assistance of counsel claims have done so on the merits of the claim and not due to a procedural default.[]

*Id.* (footnotes omitted).

Additionally, Garrison filed a motion to remand for an evidentiary hearing in the court of appeals. The Michigan Court of Appeals' denial of the motion was not based on a procedural default. Instead, the court denied the motion because Petitioner "fail[ed] to persuade the Court of the necessity of a remand at this time." *People v. Garrison*, No. 334063 (Mich. Ct. App. July 14, 2017). Accordingly, while this Court's review is limited to the evidence before the state court, the claim is not procedurally defaulted.

In her affidavit, Garrison states that on the day she was supposed to testify she arrived at court at approximately 10:30 a.m. (*Id.* at PageID.94.) This was approximately 30 minutes after the defense rested at 10:02 a.m. (ECF No. 12-18, PageID.1416.) She states that she would have testified that Garrison knocked on her front door at approximately 12:30 a.m. on July 19, 2015. (ECF No. 3, PageID.94.)

He knocked on her door because he was locked out of his upstairs apartment in their duplex home. (*Id.*)  Garrison also states her mother informed defense counsel when she arrived late to the courthouse, but defense counsel did not speak with her or call her to testify. (*Id.* at PageID.94-95.)

The Michigan Court of Appeals denied this claim because "[a]t best Ms. Garrison would have testified that the defendant arrived home at around 12:30 a.m. Had counsel asked for an adjournment to await her tardy arrival, her testimony would not have accounted for the defendant's whereabouts when the crimes were committed." *Garrison*, 2018 WL 626028, at *5.

The state court's decision was an unreasonable application of *Strickland*. Counsel listed Ms. Garrison as a defense witness.  No reasonable justification is apparent from the record for counsel not to request an adjournment.  While Ms. Garrison would not have provided an airtight alibi, significant evidence was presented that the shooting occurred close in time to 12:30.  Reed's 911 call was made at 12:48.  Reed's statement to police and trial testimony about how much time elapsed between when he heard the shots and when he called 911 were inconsistent. At one point, he testified that he was alerted to the fire about three to five minutes after he heard the gunshots, ran outside for a "split second," ran inside to throw on his shoes without tying them, and then went back outside to film the fire and called 911. (ECF No. 12-15, PageID.910-913.)  According to Google maps, Garrison's

28

residence was approximately 20 miles from Walker's house, with a driving time of roughly 30 minutes.  If the shooting occurred at midnight or any time after that, Ms. Garrison's testimony may have raised a doubt in the jurors' minds as to whether he could have been at Walker's home at the time of the shooting.

Although counsel's decisions receive substantial deference under *Strickland*, "there must be some limit to this deference."  *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007).  Here, counsel's failure to move for an adjournment lacks any reasonable justification and Garrison's decision not to call the exculpatory witnesses was an uninformed and unreasonable decision.  The state court's holding to the contrary unreasonably applies *Strickland*'s performance prong.

The impact of defense counsel's error must be considered in the context of the totality of the evidence presented.  *See, e.g., Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").  The timeline of when the shooting and arsons occurred was central to this case.  There is a reasonable probability that Ms. Garrison's testimony could have influenced the jury.  The Court finds that Garrison was prejudiced by counsel's deficient performance and that the Michigan Court of Appeals' decision to the contrary was an unreasonable application of Supreme Court precedent.

## IV.  Conclusion

The evidence in this case is insufficient to support the convictions.  The state court's determination to the contrary was an unreasonable application of *Jackson v. Virginia*.   In addition, defense counsel was ineffective for failing to seek an adjournment to allow Sharee Garrison to testify and Petitioner was prejudiced by counsel's performance.   The state court's decision to the contrary was an unreasonable application of *Strickland v. Washington.*

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. # 1] is CONDITIONALLY GRANTED.   UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF EITHER THE DATE OF THIS OPINION **OR** THE DATE WHEN ANY APPELLATE REVIEW BECOMES FINAL, WHICHEVER DATE IS LATER, RESPONDENT IS ORDERED TO RELEASE PETITIONER FROM CUSTODY IMMEDIATELY THEREAFTER IF RESOLVED IN PETIITONER'S FAVOR. PETITIONER'S CONVICTIONS ARE VACATED ONCE ANY APPEAL IS FINAL AND RESOLVED IN PETITIONER'S FAVOR.

IT IS FURTHER ORDERED that this Action is deemed CLOSED on the Court's docket.

IT IS FURTHER ORDERED that the Respondent serve a copy of this Opinion and Judgment to the appropriate Prosecutor, Wayne County Circuit Court Judge and to the Wayne County Clerk for filing in the appropriate case file.


s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated:  March 31, 2025